

Lessee No. __107880__

# Equipment Lease Agreement

This EQUIPMENT LEASE AGREEMENT, dated as of __08-16-2019__ (this "Lease") is entered into by and between ClickLease LLC ("Lessor"), and __Xavier Henderson a  TX LLC__ ("Lessee") located at __7506 del glen ln, null, Houston, TX, 77072__

**1- Certains Definitions:**

**Equipment:**

| Manufacture | Model | VIN/Serial Number | Supplier | Location |
|---|---|---|---|---|
| See invoice: Q1224-1 | See invoice: Q1224-1 | See invoice: Q1224-1 | | 7506 del glen ln |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

The equipment set forth above, as well as, in each case, all related software, intellectual property, accessories, additions, improvements, replacement parts, insurance, warranty, rights and claims, books and records and all proceeds of and/or related to the foregoing, in each case, now existing and hereafter arising, shall be referred to as the "Equipment."

TERM OF LEASE: __22__ months ("Term"). INITIAL PAYMENT DATE: __09-16-2019__
ADVANCE PAYMENT: $ __199.00__ to be applied to Documentation Fees.
MONTHLY BASE PAYMENT: $ __358.03__ per month + Applicable Taxes ("Periodic Payment(s)")
PURCHASE OPTION AMOUNT $ __716.06__

# Exhibit A

ClickLease_000001

**2. Lease and Periodic Payments.** Lessor agrees to lease to Lessee, and Lessee agrees to lease from Lessor, the Equipment on the terms and conditions set forth herein, including, but not limited to, paying the Periodic Payments (identified above) to Lessor as set forth herein. The first Periodic Payment shall be due on the Initial Payment Date (defined herein), and subsequent Periodic Payments shall be due on the same day of each successive month during the Term (identified above), or on such other date so designated by Lessor, in its sole discretion. Periodic Payments (and any other amounts due hereunder or under this Lease) received by Lessor shall be applied, in Lessor's sole discretion, to the sums due by Lessee. Lessee shall pay Lessor the Periodic Payments and other sums due hereunder, without prior notice or demand, in the amounts and at the times specified above. All payments due hereunder are due whether or not Lessee is invoiced or receives notice from Lessor. If any payment (Automated Clearing House (ACH) or otherwise) made to Lessor is returned and/or dishonored, Lessee shall be assessed a fee of $30.00 in addition to any other applicable charges. TIME IS OF THE ESSENCE with respect to Lessee's obligations to make the payments due hereunder.

**3. Delivery and Acceptance.** Lessee shall inspect the Equipment to confirm it is acceptable. Provided that Lessee has not otherwise accepted the Equipment in writing, it shall be conclusively presumed that Lessee unconditionally accepted the Equipment on its delivery date unless Lessee has sent Lessor written notice of non-acceptance within five (5) days of the date the Equipment was delivered to the Lessee, which notice must (i) state that Lessee does not accept the Equipment and a genuine specific reason for such non-acceptance; and (ii) be sent by overnight delivery through (A) a nationally recognized company such as Federal Express or UPS, or (B) the United States Postal Service (such as Express Mail or similar service) to Lessor at 1182W 2400S, West Valley, UT 84119. Once the Equipment is accepted, it shall be unconditionally accepted by Lessee for all purposes of this Lease and all of Lessee's obligations thereunder shall commence. All expenses incurred in connection with Lessor's purchase of the Equipment (including shipment, delivery, installation, and servicing of the Equipment by the manufacturer or supplier or by any other party) shall be the responsibility of Lessee. If Lessee shall, for any reason, refuse to accept delivery of the Equipment, Lessee will have all rights and assume all obligations as a purchaser of the Equipment and will indemnify and hold Lessor harmless from and against any and all claims and damages, if any (including reasonable attorneys' fees) of the manufacturer, supplier or any other person relating to the Equipment. For the purposes of this Lease, the date on which Lessee accepts the Equipment shall be referred to as the "Commencement Date" and Lessor is authorized to fill in such date as the Initial Payment Date above. In the event that the Lessor chooses, in its sole discretion, an Initial Payment Date that is different from the Commencement Date, then Lessee shall be liable to Lessor for an interim payment (the "Interim Rent Payment") in an amount equal to the Periodic Payment divided by 30 and then multiplied by the number of days between, and including, the Commencement Date to, but excluding, the Initial Payment Date. The time frame covered by the Interim Rent Payment shall be added to the Term. The Interim Rent Payment shall be due and payable upon the execution of this Lease, or at such other time as determined by Lessor in its sole discretion and payable on demand. In the event the Initial Payment Date is not set forth above at the time this Lease is executed by Lessee, Lessor is authorized to select an Initial Payment Date (and advise Lessee of the Initial Payment Date selected by delivery of its invoice or another writing) upon acceptance of the Equipment by Lessee.

**4. Non-Cancelable. THIS LEASE IS IRREVOCABLE AND MAY NOT BE CANCELLED, TERMINATED OR REVOKED BY LESSEE DURING THE TERM OR OTHERWISE FOR ANY REASON WHATSOEVER.**

**5. Equipment Location.** Equipment delivered shall not be removed from the "Equipment Location" specified above, without Lessor's express prior written consent, which consent may be granted, withheld or conditioned in Lessor's sole and absolute discretion. Lessor shall have the right to inspect Equipment at any reasonable time. If Lessor requests Lessee to affix labels to the Equipment stating that Equipment is owned by Lessor, Lessee shall affix such labels to the Equipment and keep them in a prominent place. Lessee hereby authorizes Lessor to insert in this Lease and/or other related documents the serial numbers and other identification data of the Equipment, as applicable.

Upon the expiration or other termination of the Term of this Lease, Lessee shall have the obligation, and Lessor shall have the right, to remove, or to cause the removal of, the corresponding Equipment from the premises whereon the same is then located, for return to Lessor pursuant to the provisions of this Lease, whether or not any of the Equipment is affixed or attached to realty or to any building, and, in the exercise of such right, Lessor shall not be liable for any damage caused to realty or any such building occasioned by any removal of the Equipment by Lessor and/or its agents. All replacement parts, additions and accessories incorporated in or affixed to the Equipment after the commencement of this Lease shall become the property of Lessor.

**6. Title.** Lessor Equipment shall at all times have title and ownership of the Equipment, and Lessee shall acquire no ownership, title, property, right, equity, or interest in the Equipment other than its interest as Lessee under this Lease. If, and to the extent, Lessee is deemed to have acquired any rights in the Equipment by reason of the payment of a deposit or down payment or the execution of a purchase order or purchase agreement or otherwise, such rights are hereby sold, assigned and transferred to Lessor free and clear of any liens. The parties further intend and agree that the Equipment shall remain personal property, notwithstanding the manner in which it may be affixed to any real property. Lessee shall maintain the Equipment free from all claims, liens and legal processes of creditors of Lessee and defend, at its own expense, Lessor's title to the Equipment from such claims. Lessee shall notify Lessor immediately upon receipt of notice of any lien or claim affecting the Equipment or in Lessee's rights with respect to the Equipment.

**7. Maintenance and Repairs.** Lessee shall, at its own expense, (a) maintain the Equipment in good and safe operating order, repair and condition, and in accordance with the requirements of the manufacturer's recommendations, requirements and/or guidelines and any governmental authority, domestic or foreign, having jurisdiction thereof, or any other requirements imposed by Lessor, (b) procure and pay for all fuel, service, inspections, overhauls, replacements, substitutions, materials and labor necessary or desirable for the proper use, repair, operation and maintenance of the Equipment, (c) keep the Equipment protected from the elements when not in use, and (d) provide for proper disposal of bi-products as well as any materials, fluid or other items used and/or related to the Equipment. **LESSEE SHALL NOT MAKE ANY ALTERATIONS, MODIFICATIONS, ADDITIONS OR IMPROVEMENTS TO THE EQUIPMENT WITHOUT LESSOR'S PRIOR WRITTEN CONSENT, WHICH CONSENT MAY BE GRANTED, WITHHELD AND/OR CONDITIONED IN LESSOR'S SOLE AND ABSOLUTE DISCRETION.** Lessee shall, at all times, comply with all applicable Federal, state or local law, statute, rule or regulation or the common law relating to the Environment, Release of substances and/or occupational health and safety. As used herein, the terms "Release" and "Environment" shall have the meaning set forth in the Federal Comprehensive Environmental Compensation, Liability and Response Act of 1980, as amended.

**8. Loss, Insurance and Risk of Loss.** Lessee shall bear the entire risk of and shall obtain insurance to cover any loss, theft, damage, destruction or requisition (each, a "Casualty") of the Equipment, from any cause whatsoever, commencing with shipment of the Equipment to Lessee. Lessee shall promptly notify Lessor in writing of any Casualty and follow Lessor's directive by either (i) placing the affected Equipment in its pre-Casualty condition, at Lessee's sole cost and expense; or (ii) paying all obligations, less the net Casualty proceeds received by Lessor. Lessor and its assigns shall be named as Lessee's loss payee and additional insured on all insurance policies covering the Equipment. Upon Lessor's written request, Lessee agrees to provide Lessor valid evidence of its insurance. If Lessee fails to obtain the appropriate insurance as determined in Lessor's sole discretion ("Appropriate Insurance") and without Lessor waiving any default by Lessee as a result, Lessor has the right to purchase, at Lessee's expense, the Appropriate Insurance. If Lessor purchases Appropriate Insurance on behalf of Lessee, Lessee acknowledges and agrees that: (i) the premium Lessor invoices to the Lessee may be higher than what Lessee could be paying had Lessee obtained its own insurance; (ii) Lessor may receive a profit; and (iii) Lessor is not a seller of insurance. Lessor shall not be liable for loss or damage resulting from any failure of or delay in delivery, damage to the Equipment, governmental regulations, strike, embargo and/or a failure to obtain Appropriate Insurance or any insurance.

**9. Lessee Representations, Warranties, Agreements and Covenants.** Lessee represents and warrants to Lessor that: (a) if Lessee is a corporation, partnership or limited liability entity, Lessee is, and shall at all times hereafter be, duly organized and existing in good standing under the laws of the state indicated above and has duly authorized the execution and performance of this Lease; (b) the Equipment is being leased solely for business or commercial purposes and no amounts paid to the supplier for the acquisition by Lessor of the Equipment for lease to Lessee hereunder are for any purpose other than the actual price to purchase the Equipment (other than those amounts, if any, consented to by Lessor in writing in advance) and which amounts are to be repaid by Lessee pursuant to this Lease); (c) the execution and performance of this Lease by Lessee does not violate any law or regulation or, if Lessee is a corporation, partnership or limited liability entity, Lessee's corporate charter, by-laws, partnership agreement, operating agreement, articles of organization or the like (and the execution and performance of this Lease has been authorized by all required corporate action on the part of Lessee), nor will the execution of this Lease constitute a default under any agreement to which Lessee is now or hereafter a party; (d) this Lease and any and all ancillary documents, agreements and/or instruments relating thereto have been duly and validly executed and delivered by Lessee and constitutes the valid and binding obligation of Lessee enforceable against Lessee in accordance with its terms; (e) there are no suits or proceedings pending or threatened against or affecting Lessee which would impair the ability of Lessee to perform its obligations under this Lease; (f) the execution and performance of this Lease by Lessee does not require the consent or approval or authorization or order of, the giving of notice to, or the registration with, any Federal, state or other governmental authority or agency; (g) there has been no material adverse change in the financial condition of Lessee or any guarantor of any obligation(s) of Lessee under this Lease since the last submission of financial information to Lessor; (h) no act or event has occurred that violates, conflicts with or causes a breach under this Lease or any other agreement or instrument to which Lessee is a party; and (i) Lessee is in compliance with, shall continue to abide by and use the Equipment in accordance with all applicable Federal, state and local laws, rules and regulations. Lessee expressly agrees and confirms that upon Lessee's first submission of its application for financing, Lessee authorized, and hereby further authorizes, Lessor, in its sole and absolute discretion, to obtain one or more credit reports with respect to Lessee or any guarantor, from any bank, financial institution, credit reporting agency, trade reference and/or any other third party, at any time during the Term of this Lease or while this Lease shall remain in effect. During the Term, Lessee shall furnish Lessor within ten (10) days of written request all financial statements, reports and tax returns on Lessee and/or any guarantor requested by Lessor.

**10. Disclaimer of Warranties.** Lessee has selected both the Equipment and the supplier of the Equipment. Lessee confirms that Lessor is not the supplier of the Equipment, or its agent. Lessor hereby assigns to Lessee, so long as no Default (as defined below) shall have occurred and be continuing hereunder, benefits which Lessor may have under any warranty or the like affecting the Equipment by the manufacturer or the supplier thereof, provided however, that any recoveries shall be used to repair or replace the Equipment. **LESSOR DISCLAIMS ALL WARRANTIES, AND MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, OF ANY KIND AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, AS TO TITLE, FITNESS, QUALITY, DESIGN, CONDITION, CAPACITY, SUITABILITY, DURABILITY, OPERATION, MERCHANTABILITY, PERFORMANCE, FITNESS FOR ANY PARTICULAR PURPOSE, OR AS TO THE MATERIAL OR WORKMANSHIP OF ANY ITEM OF EQUIPMENT. LESSOR SHALL NOT BE LIABLE TO LESSEE FOR ANY LOSS, DAMAGE OR EXPENSE OF ANY KIND OR NATURE, CAUSED DIRECTLY OR INDIRECTLY BY ANY EQUIPMENT OR BY ANY DEFECT OR DEFECTS THEREIN OR BY THE USE OR MAINTENANCE THEREOF, OR BY THE REPAIR, SERVICING OR ADJUSTMENT THEREOF, OR BY ANY DELAY OR FAILURE TO PROVIDE ANY THEREOF, OR BY ANY INTERRUPTION OF SERVICE OR LOSS OF USE THEREOF, OR BY ANY LOSS OF BUSINESS WHATSOEVER AND HOWSOEVER CAUSED. LESSOR SHALL HAVE NO OBLIGATION TO MAINTAIN, INSTALL, ERECT, LET, ADJUST OR SERVICE THE EQUIPMENT. LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES HOWSOEVER ARISING. ALL OBLIGATIONS AND PAYMENTS UNDER THIS LEASE ARE ABSOLUTE, UNCONDITIONAL AND SHALL NOT BE SUBJECT TO ANY REDUCTION, RECOUPMENT, SETOFF, DEFENSE OR COUNTERCLAIM FOR ANY REASON, INCLUDING, WITHOUT LIMITATION, ANY MALFUNCTION, DEFECT OR INABILITY TO USE THE EQUIPMENT.**

**11. Late Charges.** In addition to Lessor's other remedies set forth above, for any Periodic Payment due hereunder which is not paid when due, Lessee shall pay a late charge of up to 10% percent of the amount that is overdue but no less than $25.00. The parties hereto agree that (a) the amount of such late charge represents a reasonable estimate of the cost that Lessor would incur in processing each delinquent payment by Lessee and that such late charge shall be paid as liquidated damages for each delinquent payment, and (b) the payment of late charges and the payment of Default Interest are distinct and separate from one another. Acceptance of any late charge or interest shall not constitute a waiver of a Default with respect to the overdue amount or prevent Lessor from exercising any other available rights and remedies under this Lease, in equity and/or law.

**12. Default and Remedies.** A Default hereunder shall occur if Lessee: (a) fails to pay the full amounts due and owing hereunder; (b) breaches any term, covenant, condition or agreement herein; (c) made a false statement in any document submitted in connection with this Lease; (d) becomes insolvent; (e) dies or ceases doing business as a going concern; (f) if an entity sells all, or substantially all, of its assets, or if any event occurs which results in Lessee's equity owners (as of the Commencement Date) owning less than 50% of the total issued and outstanding voting equity of Lessee at any time thereafter; (g) makes an assignment for the benefit of creditors; (h) files for protection under the United States Bankruptcy Code, as amended; (i) shall be involuntarily placed into a bankruptcy or other involuntary proceeding, a trustee or receiver shall be appointed for Lessee or its property which proceeding, trustee or receiver remains in place for 30 days; (j) shall attempt to rescind Lessee's obligations under this Lease to Lessor and/or (k) shall suffer a material adverse change in its condition or affairs, financial or otherwise, that in the sole opinion of Lessor materially increases the likelihood that the Lessee's obligations under this Lease will not be performed and/or that Lessor may be unable to recover or protect the Equipment. For purposes of this Section, the term "Lessee" shall include each guarantor of this Lease. Upon any Default, Lessor may, at its option: (a) seek any and all past due sums due and owing hereunder and accelerate all future sums to be due hereunder (including, but not limited to, all future Periodic Payments less a applicable present value discount, at a rate of 3%, as of the date of Default) which sum shall then be due and owing as of the date of default; (b) cancel this Lease; (c) charge Lessee interest on all monies due to Lessor at the highest annual interest rate allowable by law (the "Default Interest") on all sums due herein from the due date thereof until receipt by Lessor; (d) enter any location with or without judicial process and take possession of the Equipment; (e) enter and remain in the Equipment's location to prepare, sell, dispose and/or repossess the Equipment, without any liability for rent or occupancy charges; (f) require Lessee to assemble the Equipment and any records pertaining thereto and make them available at a place designated by Lessor; (g) have all other rights and remedies under the Uniform Commercial Code, as amended (the "Code") and/or applicable law; (h) recover from Lessee expenses of taking, storing, preparing for sale and/or, selling the Equipment (including Lessor's attorneys' fees, auctioneers and storage fees, sales commissions and advertising expenses); and/or (i) dispose of the Equipment, in whole or in part, at a public or private sale.  The net proceeds of such sale when received by Lessor shall be applied in Lessor's sole discretion to the sums due hereunder.  Lessee may dispose of the Equipment in its existing condition or, at its election, may take such measures as it deems necessary or advisable to repair, transport service, prepare for sale, modify and/or store the Equipment.

**Exhibit A**

ClickLease_000003

If Lessor disposes of the Equipment, Lessee shall pay any deficiency remaining after application of the net proceeds, if any, to any amounts due. All of Lessor's remedies are cumulative, are in addition to any other remedies provided for by law, and may, to the extent permitted by law, be exercised concurrently, separately or in any manner Lessor chooses. Lessor shall be entitled to an injunction or decree of specific performance to enforce any of its rights. Lessee waives any requirements for the posting of a bond or other security in connection therewith.

**13. Taxes and Indemnification.** Lessee hereby assumes liability for, and shall fully indemnify, protect, save and keep harmless Lessor, and Lessor's successors and assigns (whether or not Lessee is in default), from and against: (i) any and all liabilities, obligations, damages, claims, actions, lawsuits, legal fees, court costs, and expenses of any kind which may be imposed on, incurred by or asserted at any time against Lessor, against the Equipment or any portion thereof, in any way relating to, resulting from or arising out of the acquisition, use or delivery (or redelivery) of the Equipment, in connection with this Lease, or Lessor's protection, preservation and/or enforcement of its rights hereunder, under any other obligations, agreements or documents and/or applicable law; and (ii) any and all taxes, however designated, and any related interest or penalties arising out of the ownership, use and operation of the Equipment (collectively, "Taxes"). Lessee shall pay, when due, all Taxes in full. Notwithstanding the foregoing, if Lessor pays any Taxes owed by Lessee hereunder, Lessee shall reimburse Lessor for said amount immediately upon demand, together with all processing fees and charges imposed by Lessor. The indemnities set forth in this Section shall survive the expiration or termination of this Lease.

**14. End of Term Obligations.** Lessee must provide written notice to the Lessor in accordance with the terms of the Lease, between 30 and 90 days before the expiration of the Term of the Lease, of Lessee's commitment to renew the Lease, return the Equipment and/or purchase the Equipment (the "End of Term Notice"). In the event that Lessee fails to provide the End of Term Notice timely to Lessor and in the manner set forth herein, then the Term of the Lease shall automatically renew on a month-to-month basis. Should the Lessee choose to return the Equipment upon the expiration, or earlier termination or cancellation by Lessor of this Lease, Lessee shall, at its own expense, deliver it by such common carrier as Lessor may specify with freight prepaid to such locations as Lessor shall specify and in the condition required under this Lease. The Equipment must be returned to Lessor in the same condition as when delivered to Lessee hereunder (ordinary wear and tear alone excepted), in such an operating condition that permits the Equipment to perform its originally intended use, and free and clear of all liens, encumbrances or rights of any third parties. Lessor shall have the right to enter upon any premises where the Equipment may be located to perform any of Lessee's obligations authorized by this Lease, and Lessee shall reimburse Lessor for all costs and expenses Lessor incurs in fulfilling such obligations. If Lessee provides the proper End of Term Notice timely and then Lessee fails to timely exercise and act on its commitment set forth in the End of Term Notice to renew this Lease, purchase the Equipment and/or return the Equipment all in accordance herewith, then the Term of this Lease shall be extended at Lessor's sole option for a period of no more than ninety (90) days (an "End of Term Default"). If the Term of this Lease is extended pursuant to the terms hereof, Lessee shall continue to pay the Periodic Payment in effect prior to the expiration of the Term of this Lease, and all other provisions of this Lease shall continue to apply. Lessor's acceptance of any Periodic Payment after an End of Term Default shall not constitute a renewal of the Term of this Lease, or a waiver of Lessor's right to prompt return of the Equipment in proper condition. If Lessee purchases the Equipment, it shall pay the Purchase Option Amount set forth herein (and if not stated on the first page of this Agreement, for the fair market value set by Lessor) thirty (30) days after the last Periodic Payment (or as otherwise agreed in writing between Lessor and Lessee).

**15. Assignment.** Lessee may not assign this Lease or any of the Equipment without Lessor's express prior written consent, which consent may be granted, withheld and/or conditioned in Lessor's sole and absolute condition. All rights of Lessor in the Equipment and under this Lease may be assigned, pledged, mortgaged, transferred or otherwise disposed of by Lessor, either in full or in part, without notice to Lessee. In the event of such assignment by Lessor, whether as security or otherwise, no breach or default by Lessor shall excuse performance by Lessee, and in the event of such default or breach by Lessor, Lessee shall pursue any rights on account thereof solely against Lessor and shall not assert against assignee any defense, counterclaim or set-off which Lessee may have against Lessor. If Lessee is given notice of any such assignment, Lessee agrees to acknowledge receipt thereof in writing and, if so directed, to pay such assignee the Periodic Payments and other sums payable hereunder assigned. Notwithstanding any prohibition against the assignment of this Lease, to the extent this Lease is appropriately or inappropriately assigned, it shall be binding upon and shall inure to the benefit of the heirs, survivors, personal representatives successors and assigns of the parties hereto.

**16. Finance Lease.** The parties agree that Article 2A - Leases of the Uniform Commercial Code ("Code") shall apply hereto and this Lease is intended to be and will be considered a "finance lease" as defined in the Code. **LESSEE HEREBY AGREES TO WAIVE ANY AND ALL RIGHTS AND REMEDIES AFFORDED BY SECTIONS 2A-508 THROUGH AND INCLUDING 2A-522 OF THE CODE, INCLUDING BUT NOT LIMITED TO THE RIGHT TO (A) CANCEL AND REPUDIATE THIS LEASE (B) REJECT OR REVOKE ACCEPTANCE OF THE EQUIPMENT, (C) RECOVER DAMAGES FROM LESSOR FOR BREACH OF WARRANTY OR FOR ANY OTHER REASON, (D) CLAIM A SECURITY INTEREST IN ANY EQUIPMENT IN LESSEE'S POSSESSION OR CONTROL, (E) DEDUCT FROM THE PERIODIC PAYMENTS ALL OR ANY PART OF ANY CLAIMED DAMAGES RESULTING FROM LESSOR'S DEFAULT UNDER THIS LEASE, (F) ACCEPT PARTIAL DELIVERY OF THE EQUIPMENT, (G) "COVER" BY MAKING A PURCHASE OR LEASE OF OTHER EQUIPMENT IN SUBSTITUTION FOR THE EQUIPMENT DUE FROM LESSOR, (H) RECOVER FROM LESSOR ANY GENERAL, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR ANY REASON WHATSOEVER, AND (I) SPECIFIC PERFORMANCE, REPLEVIN OR THE LIKE FOR ANY OF THE EQUIPMENT. IN ADDITION, TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE ALSO HEREBY WAIVES ANY RIGHTS NOW OR HEREAFTER CONFERRED BY STATUTE OR OTHERWISE, WHICH MAY REQUIRE LESSOR TO SELL, RELEASE OR OTHERWISE USE OR DISPOSE OF ANY OF THE EQUIPMENT IN MITIGATION OF LESSOR'S DAMAGES, AS SET FORTH IN THIS LEASE, OR THAT MAY OTHERWISE LIMIT OR MODIFY ANY OF LESSOR'S RIGHTS AND REMEDIES UNDER THIS LEASE.**

**17. UCC Filing; Security Interest; Financing; Cross-Collateralization.** (a) Filing. Lessee hereby authorizes Lessor, at Lessor's option and as contemplated by the Code, to file one or more financing statements covering the Equipment, signed only by Lessor and agrees to pay Lessor a fee for such filing, documenting, recordings, stamp fees or taxes arising from the filing or recording of such instrument or statement (including, without limitation, attorneys' fees). The failure of Lessor to file or properly file any financing statements or the modification, release, substitution, subordination or alteration of any security interest in the Equipment shall in no way relieve Lessee or any guarantor thereof from its obligations under this Lease or any guaranty furnished in connection therewith; (b) Security Agreement. If this Lease is deemed to be a lease intended as security or a secured transaction, then this Lease shall be deemed an authenticated security agreement and Lessee expressly agrees that the Equipment leased hereunder shall be pledged to Lessor as security for the performance of all of Lessee's obligations under this Lease; (c) if any portion of the Equipment to be leased hereunder is not deemed goods as defined under Article 2A of the Code, then that portion is being financed at an interest rate of 9.95%; (d) Cross-Collateralization. All of the Equipment leased under this Lease shall secure all obligations under this Lease, any and all other agreements, document and/or loans Lessee may have with Lessor, and Lessor shall have a first-position security interest in such Equipment.

# Exhibit A

**18. Power of Attorney.** Lessee grants Lessor (and any third party filing service company as chosen by Lessor) a specific power of attorney for Lessor to use as follows: (1) Lessor may sign and file on Lessee's behalf any document Lessor deems necessary to (i) perfect or protect Lessor's interest in the Equipment (or other collateral pledged to Lessor by Lessee); and (ii) make any changes to this Lease which are authorized by this Lease; and (iii) to prepare and/or execute any documents necessary to enforce any of Lessor's rights herein as to the Equipment including but not limited to all documents necessary to transfer the title to the Equipment; and (2) Lessor may sign, endorse or negotiate for Lessor's benefit any instrument representing proceeds from any policy or insurance covering the Equipment or any Collateral. Lessee specifically authorizes Lessor to make any such amendment to this Lease which amendments shall be incorporated into this Lease as if originally set forth herein or therein (as applicable) in the event it is necessary to reflect a change in one or more of the following conditions: (a) Lessor's actual cost of procuring the Equipment, or providing the Equipment to Lessee, (b) taxes and/or interest rates, or (c) a change in Periodic Payments as a result of (a) or (b), above (provided any change does not increase the aggregate of Periodic Payments by more than 15%), or (d) the description of the Equipment. Lessor shall advise Lessee of any such amendments described in this Section entitled "Power of Attorney".

**19. Further Assurances.** Lessee shall execute and deliver to Lessor, upon Lessor's request, such documents, agreements, instruments and assurances as Lessor deems necessary for the protection of Lessor's ownership of the Equipment and for the confirmation, validation and/or any other matter related to this Lease, any guaranty, Equipment, and/or any other related document and Lessor's rights thereunder. On the request of Lessor, Lessee shall execute and deliver such further documents and do such further acts as Lessor may reasonably request in order to fully effect the purposes of this Lease, and any assignment hereof.

**20. Tax Treatment.** No representations or warranty is, or has been, made by Lessor as to the treatment for Federal, state or local income tax purposes of this Lease or the Equipment or any rent or other payment made hereunder or in connection herewith. Lessor has not agreed to take or refrain from taking any action whatsoever in regard to such treatment.

**21. Severability and Waiver.** If any provision of this Lease is held to be invalid or unenforceable by a court of competent jurisdiction, that provision shall be deemed ineffective to the extent of such holding, but all other provisions of this Lease shall nevertheless continue in full force and effect. If any provision is held invalid or unenforceable by a court of competent jurisdiction with respect to any particular circumstance, that provision shall be deemed to be ineffective for that circumstance only, but shall otherwise remain in full force and effect in all other circumstances. In no event shall the execution of this Lease constitute a waiver by Lessor of any preexisting Default in the performance of the terms and conditions hereof. In the event a court of competent jurisdiction rules that this Lease is a secured transaction governed by usury laws and that the interest rate charged under this Lease exceeds the maximum rate of interest allowed by applicable law, then the effective rate of interest shall be automatically reduced to the maximum lawful rate available under the applicable usury laws.

**22. Notice.** Except as otherwise provided in this Lease, any notices, requests, demands and other communications required or permitted to be given hereunder by either Lessor or Lessee shall be in writing and shall be: (i) transmitted by e-mail delivery to the respective party's email address as set forth herein and/or in Lessor's books and records; (ii) transmitted by postage pre-paid first class certified mail to the address set forth herein and/or in Lessor's books and records; (iii) transmitted pre-paid by an overnight courier for priority next day delivery and shall bear the address as a party to this Lease shall furnish to the other in writing; or (iv) personally delivered. All notices and other communications shall be deemed to have been duly given, received and effective on: (i) the business day after the date of transmission if by overnight delivery or if transmitted by e-mail delivery; (ii) three business days after the date of posting if transmitted by certified mail; or (iii) the date of receipt if delivered personally.

**23. Marketing Communications.** The Lessor, and any guarantor, agree that by providing Lessor, now or in the future, with an email address or telephone number for a wireless device, you expressly consent to receiving communications including email, voice and/or text messages from Lessor, Lessor's affiliates and/or assigns at that email address or telephone number, regardless of their purpose, including, but not limited to, marketing or collection purposes. These calls and messages may be subject to charges from your internet or wireless services provider. This consent is not a condition of doing business with, or making a purchase of, any goods and/or services from Lessor. Lessee and any guarantor may unsubscribe or opt-out of any further telemarketing calls or marketing text messages at any time.

**24. Entire Agreement.** This Lease and the documents executed and delivered in connection herewith contain the entire agreement between the parties and none of the provisions of this Lease can be amended, modified or waived, except in a writing signed by Lessee and Lessor (except as provided herein). All prior agreements, representations and warranties of Lessor, whether written or verbal, are merged into this Lease and shall have no force and effect unless set forth herein in writing.

**25. Attorneys' Fees and Expenses.** Lessee will pay, or will upon demand reimburse Lessor, for all of the out-of-pocket costs and expenses incurred by Lessor in connection with this Lease and/or Lessor's purchase of any of the Equipment for lease hereunder, including, without limitation, the fees and disbursements of any attorney specially retained by Lessor in connection with the preparation and review of this Lease and related documentation, if any, and all fees and disbursements of any attorney specially retained by Lessor to take any action or proceeding to enforce the terms of this Lease. Lessee shall also be liable for all attorneys' fees and other expenses incurred by reason of any Default, the exercise of Lessor's remedies, or the preservation or protection of Lessor's rights including, but not limited to, fees or expenses incurred in connection with any litigation, appeal and/or bankruptcy proceedings (including, but not limited to, relief from stay motions, cash collateral disputes, assumption/rejection motions and disputes regarding proposed disclosure statements and plans). In addition, Lessee shall be liable for all costs and expenses incurred in connection with the return of the Equipment in accordance with the terms of this Lease and any other applicable return conditions contained herein or in placing such Equipment in the condition required by the applicable provisions of this Lease.

**26. Governing Law, ALL MATTERS INVOLVING THE CONSTRUCTION, VALIDITY, PERFORMANCE AND ENFORCEMENT OF THIS LEASE AND/OR GUARANTY WILL BE GOVERNED BY THE LAWS OF THE STATE OF UTAH, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW OR CHOICE OF LAW.** Lessee hereby agrees that Lessor shall have the option to choose the venue and forum of any litigation, action or proceeding arising directly or indirectly from this Lease and Lessee hereby consents that same may be heard in the State Courts of the State of Utah or in the U.S. District Court for the District of Utah; provided, however, if Lessee commences any litigation, action or proceeding against Lessor, it may only do so in the State Courts of the State of Utah or the U.S. District Court for the District of Utah. The provisions of this paragraph do not prohibit Lessor from commencing any necessary legal action or instituting any appropriate proceeding in any court of competent jurisdiction or venue. Lessee waives the personal service of any and all process upon Lessee herein and consents that all such service of process may be sent to Lessee at the address hereinabove stated by either (i) overnight delivery through (A) a nationally recognized company such as Federal Express or UPS, or (B) the United States Postal Service (such as Express Mail or similar service), and service so made by such overnight delivery shall be completed two (2) days after the same has been posted as aforesaid, (ii) certified mail, return receipt requested, and service so made by such certified mail shall be completed five (5) days after same has been posted as aforesaid or (iii) in accordance with applicable law. **LESSEE IRREVOCABLY WAIVES TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS LEASE, AND/OR ANY OF THE AGREEMENTS, DOCUMENTS AND/OR INSTRUMENTS EXECUTED AND/OR DELIVERED IN CONNECTION HEREWITH, AND ANY AND ALL RIGHT TO CLAIM OR RECOVER ANY PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN (OR IN ADDITION TO) ACTUAL DIRECT DAMAGES.**

**27. Execution.** This Lease may be signed electronically and all signatures transmitted by facsimile, email, digital photographs or other electronic means shall for all purposes be deemed effective and binding. This Lease may be executed in one or more counterparts, each of which when taken together shall constitute a whole. This Lease which contains the manually applied signature of Lessor or an authoritative copy as defined by the Code, shall constitute the sole record of "chattel paper" for Code purposes.

**28. Supplier and Manufacturer Not an Agent.** NEITHER A SUPPLIER OR A MANUFACTURER OF THE EQUIPMENT NOR ANY SALESMAN OR OTHER AGENT OF THE SUPPLIER OR MANUFACTURER IS AN AGENT OF LESSOR. NO SALESMAN OR AGENT OF THE SUPPLIER OR MANUFACTURER IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE AND ANY REPRESENTATION AS TO THE EQUIPMENT OR ANY OTHER MATTER BY THE SUPPLIER OR MANUFACTURER SHALL NOT IN ANY WAY AFFECT LESSEE'S DUTY TO MAKE THE PERIODIC PAYMENTS AND PERFORM ITS OTHER OBLIGATIONS SET FORTH IN THIS LEASE.

IN WITNESS WHEREOF, the undersigned have executed this Lease as of the date first set

| LESSOR: CLICKLEASE LLC | LESSEE |
|---|---|
| Doug Houlahan | Xavier Henderson |
| NAME | NAME |
| CEO | OWNER |
| TITLE | TITLE |
| dhoulahan@click-lease.com | felicia.hubbard2016@yahoo.com |
| Email Address | Email Address |

# Exhibit A

ClickLease_000006

*ClickLease LLC*  Commercial Lease Agreement No. 107880

# AUTHORIZATION FOR ACH
## (Repetitive)
### Return form to: funding@click-lease.com

**I authorize ClickLease LLC and or its assigns and the financial institution named below to initiate deductions from my checking/savings account for any and all amounts due under the Commercial Lease Agreement. This authority will remain in effect until I notify ClickLease LLC in writing to cancel it in such time as to afford the financial**

Xavier Henderson
**Business Name**

7506 del glen ln
**Address**

Xavier Henderson
**Name — Please Print**

*DocuSigned by:*
*Xavier Henderson*
59E325A5A034488...
**Signature**

BANK OF AMERICA, N.A.
**Name of Financial Institution**

8/16/2019
**DATE**

Xavier Henderson
**Name on Account**

**Financial Institution Routing Number**

**Account Number**

Routing Number        Account Number

# Exhibit A

ClickLease_000007

## Continuing Guaranty of Indebtedness

**1. Guaranty.** As an inducement to the granting of any loans, advances, leases or financial accommodations previously, now or hereafter made or granted by ClickLease LLC, its successors and/or assigns (collectively, "Lessor") to or for the account of _____ Xavier Henderson _____ ("Lessee"), under any equipment lease agreements, master equipment lease agreements and schedules thereto, equipment finance agreements, promissory notes, conditional sales contracts and/or other agreements or obligations from Lessee to Lessor, now or hereafter executed (collectively, the "Lease Documents"), the undersigned (whether one or more, "Guarantor") hereby unconditionally, absolutely and irrevocably guarantees to Lessor (i) the timely payment of all sums which may in any manner whatsoever be presently due and owing and of all sums which shall in the future become in any manner whatsoever due and owing to Lessor from Lessee under the Lease Documents whether by acceleration or otherwise; (ii) the due performance by Lessee of all its obligations under the Lease Documents; and (iii) the due performance by any other Guarantor (if more than one) of all of the obligations under this Guaranty or any other documents executed and delivered by another guarantor in favor of Lessor in connection

**2. Guarantor Agreements.** Guarantor also agrees: (a) that this Guaranty is DIRECT, ABSOLUTE AND UNCONDITIONAL and may be enforced against any and all Guarantor(s) without (i) requiring Lessor first to resort to any other right, remedy or security or (ii) regard to the validity, regularity or enforceability of any obligation or purported obligation of Lessee under the Lease Documents or otherwise; (b) to indemnify Lessor and hold Lessor harmless from and against all obligations, demands and liabilities by whomsoever asserted and against all losses in any way suffered or incurred by Lessor as a result of or in any way arising out of transactions with Lessee, whether under the Lease Documents or otherwise; (c) that this Guaranty shall not be impaired by any modification or extension of the Lease Documents or any other agreement between Lessee and Lessor, nor by any modification or release of any of the Obligations hereby guaranteed or of any security therefor, nor by any agreement or arrangement whatsoever with Lessee or anyone else nor by Lessor's failure to properly perfect its security interest in any collateral (whether intentionally or through Lessor's acts or omissions), if any, securing Lessee's obligations under the Lease Documents, and Guarantor consents that from time to time, without notice to or further consent from Guarantor, that any of the Obligations may be accelerated, cancelled, compromised, modified or waived as Lessor may, in its sole and absolute discretion, determine; (d) that Guarantor shall be liable to Lessor for all attorneys' fees, courts costs, expenses and disbursements (collectively, "Expenses") incurred by Lessor arising out of, or related to, this Guaranty and/or any of the Lease Documents (whether or not Lessee is in default thereof) including but not limited to Expenses incurred in connection with: (i) the enforcement of any of Lessor's remedies; (ii) the defense of any claim or action brought against Lessor; (iii) any bankruptcy filing of Lessee and/or any Guarantor including the protection of Lessor's interest in any bankruptcy filing of Lessee and/or any guarantor, whether or not Lessee and/or any guarantor are in default of any of the Lease Documents and/or a guaranty; (iv) the protection of Lessor's rights under the Lease Documents; and (v) the pursuit of Lessee's compliance with its obligations under the Lease Documents; (e) that Guarantor shall not have any right of subrogation, reimbursement or indemnity whatsoever, nor any right of recourse to security for the debts and obligations of Lessee to Guarantor, unless and until all of the Obligations have been paid in full; (f) that if Lessee or any Guarantor shall at any time become insolvent or make a general assignment for the benefit of creditors or if a petition in bankruptcy or any insolvency or reorganization proceedings shall be filed or commenced by or against Lessee or any Guarantor, any and all Obligations shall, at Lessor's option, become immediately due and payable without notice; (g) if any payments received by Lessor from any source with respect to the Obligations and/or the Lease Documents, is set aside or required to be repaid, whether in any bankruptcy proceeding or otherwise, this Guaranty shall remain in full force and effect (or be reinstated) until Lessor has received and retained full payment of all Obligations, and Guarantor agrees to pay any such amount upon demand; (h) that Guarantor will not transfer any of its assets to any party without full and valuable consideration; (i) that this Guaranty is a continuing Guaranty which shall remain effective until all Obligations of Lessee to Lessor shall be paid in full; (j) that Guarantor cannot assign any of its obligations under this Guaranty;; and (k) that upon the death, dissolution (whether voluntary or otherwise) of Guarantor and/or if Guarantor shall no longer be in good standing in its state of incorporation or formation (as applicable), or any other jurisdiction where Guarantor is authorized to do business, any and all obligations of Guarantor shall, at Lessor's option, become immediately due and payable.

**Exhibit A**

**3. Representations and Warranties.** Guarantor warrants and represents to and covenants with Lessor that: (a) this Guaranty contains Guarantor's entire agreement with respect to Guarantor's guaranty of Lessee's obligations to Lessor; (b) all prior agreements, commitments, understandings, representations, warranties and negotiations in connection herewith, if any, are hereby merged into this Guaranty; (c) Guarantor has received and reviewed all of the Lease Documents and all other documentation giving rise to the Obligations and that it makes all of the express representations and warranties of a guarantor as set forth in those documents as if they were made herein; (d) no oral representations shall in any manner whatsoever modify or explain any of the terms and conditions of this Guaranty; (e) this Guaranty represents a valid and binding obligation on the part of Guarantor; and (g) Guarantor acknowledges that it will receive substantial direct and indirect benefits from the transactions contemplated by the Lease Documents and that the waivers and agreements set forth in this Guaranty are knowingly made in contemplation of, and in exchange for, such benefits.

**4. Independent Investigation.** Guarantor acknowledges that Guarantor has made an independent investigation of the financial condition of Lessee and gives this Guaranty based on that investigation and not upon any representations made by Lessor, any supplier of the equipment being leased to Lessee and/or any other person. Guarantor agrees that any delay by Lessor in exercising any or all of Lessor's rights granted under this Guaranty shall not operate as a waiver of those rights.

**5. Waivers** GUARANTOR HEREBY WAIVES: NOTICE OF ACCEPTANCE HEREOF; THE RIGHT TO A JURY TRIAL IN ANY ACTION HEREUNDER; PRESENTMENT, DEMAND AND PROTEST OF ANY INSTRUMENT AND NOTICE THEREOF; NOTICE OF DEFAULT; ITS RIGHT TO A REASONABLE DISPOSITION OF ANY COLLATERAL REPOSSESSED FROM LESSEE, THE BENEFIT OF ANY STATUTE OF LIMITATIONS AFFECTING GUARANTOR'S LIABILITY UNDER THIS GUARANTY OR THE ENFORCEMENT HEREOF; ALL OTHER NOTICES OR FORMALITIES TO WHICH GUARANTOR IS OR MIGHT BE ENTITLED WHETHER BY LAW OR OTHERWISE; ALL RIGHTS OF SET-OFF; AND ANY RIGHT IT MAY HAVE TO ASSERT, BY WAY OF COUNTERCLAIM OR AFFIRMATIVE DEFENSE IN ANY ACTION TO ENFORCE LESSOR'S RIGHTS HEREUNDER, ANY CLAIM WHATSOEVER AGAINST LESSOR.

**6. Tax Returns.** Guarantor shall provide Lessor, upon written request of Lessor, Guarantor's personal financial statement, Federal and state income tax returns and any other financial statement, tax return or other information requested within ten (10) days of written notice.

**7. Successors and Assigns.** This Guaranty shall be binding upon the successors and assigns of Guarantor and shall inure to the benefit of Lessor's successors, representatives, affiliates and assigns. If more than one person or entity shall execute this Guaranty, as a Guarantor, (i) the terms and conditions of this Guaranty shall apply to each of them, (ii) the term Guarantor shall apply to each of the undersigned executing this Guaranty, and (iii) it shall be jointly and severally enforceable by Lessor against each Guarantor.

**8. Governing Law and Enforcement of Claims.** All matters involving the construction, validity, performance and enforcement of this Guaranty will be governed by the laws of the State of Utah, without giving effect to principles of conflicts of law or choice of law. Guarantor hereby agrees that Lessor shall have the option to choose the venue and forum of any litigation, action or proceeding arising directly or indirectly from the Lease Documents and/or this Guaranty and Guarantor hereby consents that same may be heard in the State Courts of the State of Utah or in the U.S. District Court for the District of Utah; provided, however, if Guarantor commences any litigation, action or proceeding against Lessor, it may only do so in the State Courts of the State of Utah or the U.S. District Court for the District of Utah. The provisions of this paragraph are not exclusive insofar as Lessor is concerned and do not prohibit Lessor from commencing any necessary legal action or instituting any appropriate proceeding in any court of competent jurisdiction or venue. Guarantor waives the personal service of any and all process upon Guarantor herein and consents that all such service of process may be sent to Guarantor at the address stated below by either (i) overnight delivery through (A) a nationally recognized company such as Federal Express or UPS, or (B) the United States Postal Service (such as Express Mail or similar service), and service so made by such overnight delivery shall be completed 2 days after the same has been posted as aforesaid, (ii) certified mail, return receipt requested, and service so made by such certified mail shall be completed 5 days after same has been posted as aforesaid or (iii) in accordance with applicable law.

**9. Counterparts.** This Guaranty may be signed (i) in counterparts and (ii) electronically and all signatures transmitted by facsimile, email, digital photography or other electronic means shall for all purposes be deemed effective and binding.

| Signature | Print Name of Owner/Guarantor | Address | #SSN |
|---|---|---|---|
| *Xavier Henderson* (DocuSigned by: 59E325A5A034488...) | Xavier Henderson | 7506 del glen ln | |

Sign here

**Exhibit A**

ClickLease_000009

First Amendment to Equipment Lease Agreement  LES-0000002718

First Amendment to Equipment Lease Agreement

This First Amendment ("First Amendment") to Equipment Lease Agreement  LES-0000002718  is entered into this  14th day of April 2020  Between  ClickLease LLC (the "Lessor") and   Xavier Henderson   (the "Lessee").

### Recitals

a) The Lessor and Lessee are parties to the Equipment Lease Agreement reference above (as it may be amended or modified from time to time, the "LEASE") and related agreements, instruments, and documents (collectively the "LEASE").

b) Whereas, the LEASE provided for  22  payments of  358.03   with a purchase option of  716.06   commencing on  8/20/2019   and due on the 5th day of each consecutive month thereafter.

Now therefore, in consideration of the Lessee's inability to make the required monthly payments due under the LEASE, Lessor and Lessee hereby agree to amend the payment terms as follows:

Extend the term of the LEASE by 3 months.  The additional 3 payments of  119.34  , plus applicable taxes, will commence on the next scheduled payment date and continue on that same day of each of the next two consecutive months, at which time the regular lease payment of  358.03   will resume for the duration of the LEASE.

Except as expressly provided in this Amendment, all other terms, conditions, covenants and provisions in the LEASE shall be and remain in full force and effect as written, unmodified hereby. In the event of any conflict of the terms of this Amendment and the LEASE, this Amendment shall control.  In no manner shall this Amendment impair the obligations, liabilities, liens or security interest represented in the LEASE, nor shall such lien, or liens or security interest be in any manner waived or impaired or diminished.

No act, delay, omission or course of dealing between Lessor and Lessee or Guarantors, or any of them, will be a waiver of any of Lessoror's rights or remedies under the LEASE documents, including but not limited to the continuing guaranty of indebtedness, and no waiver change, modification or discharge of this Amendment or any obligation created hereby will be effective unless in writing signed by Lessor.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS AMENDMENT AND AGREES TO ITS TERMS.  IN ADDITION, EACH GUARANTOR/DEBTOR UNDERSTANDS THAT THE ORIGINAL CONTINUING GUARANTY OF INDEBTEDNESS IS EFFECTIVE UPON GUARANTOR'S/LESSEE'S EXECUTION AND DELIVERY OF THIS AMENDMENT TO LESSOR AND THAT THE CONTINUING GUARANTY OF INDEBTEDNESS WILL CONTINUE UNTIL THE DEBT HAS BEEN PAID IN FULL.  NO FORMAL ACCEPTANCE BY CREDITOR IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.

**DEBTOR:**

Xavier Henderson
*Xavier Henderson*
EF3EAB8EF5AC412...
Signature

Date:  4/14/2020

Page 1 of 1

**Exhibit A**

ClickLease_000010